# *EXHIBIT A*

Operating Engineers Local Union No. 3 proposes the following collective bargaining agreement to:

Kristin Construction

Individual Employer (Company Name)

| 1781 Autumn Meadows | Suisun | CA | 94585 | 775-690-5267 |
|---|---|---|---|---|
| Address | State | City | Zip | Telephone Number |

**SECTION NO. 1 — DEFINITIONS, COVERAGE, RECOGNITION**

*Union.* The term "Union" as used herein shall mean OPERATING ENGINEERS LOCAL UNION NO. 3 of the International Union of Operating Engineers, AFL-CIO.

*Employee.* The term "Employee" as used herein shall mean any person, without regard to race, color, religion, sex, age, national origin, handicap or disability;

a) whose work for an Individual Employer in the area covered by this Agreement falls within the recognized jurisdiction of the Union, or

b) who operates, monitors and controls, maintains, repairs, modifies, assembles, erects, ervices or each or all of them, power-operated equipment, of the type or kind of power-perated equipment used in the performance of work referred to in (a) above, regardless of whether such power-operated equipment is mechanically, electrically or electronically, ydraulically, automatically or remotely controlled, and

c) who assists or helps in the operation, maintenance, repairing or assembling, erecting or ervicing of such power-operated equipment of the type or kind of equipment used in the erformance of work referred to in (a) above, and who qualifies to register in a Job lacement Center, provided that the foregoing shall not apply to superintendents, assistant uperintendents, general foremen, foremen, timekeepers, messenger boys, guards, onfidential employees, office help, inspectors, and person specifically excluded elsewhere in his Agreement.

This Agreement shall cover and apply to all activities of the Individual Employer in the rea covered by this Agreement falling within this Union's recognized jurisdiction, including, ut not limited by inference or otherwise, to building construction, demolition, site clearing, ipelines, oil or gas refineries (excluding the falling and removal of merchantable timber by e purchaser of the merchantable timber), work covered by Section 13.00.00, Steel abricators and Erectors, which work and equipment shall be covered by Section 13.00.00, teel Fabricators and Erectors, and work covered by Section 14.00.00, Piledriving, which ork and equipment shall be covered by Section 14.00.00, Piledriving. It shall also apply to ll maintenance, modification and repair work and facilities, on-site or off-site, of the ndividual Employer in the area covered by this Agreement, except an off-site repair or naintenance facility with respect to which the Individual Employer is in a bona fide ollective bargaining relationship with a labor organization covering such Individual mployer's off-site maintenance and repair facility at the time the Individual Employer ecomes a party to, or covered by, this Agreement.

This Agreement shall cover and apply to all Employees.

*Coverage.* This Agreement shall cover and apply to Northern California, which term eans that proportion of the State of California above the northerly boundary of Kern ounty, the northerly boundary of San Luis Obispo County, and the westerly boundaries of yo and Mono Counties. Should the Individual Employer perform work falling within the nion's recognized jurisdiction, but outside the territorial jurisdiction of Northern California, shall execute and be bound by the terms of the applicable Master Agreement for that rritorial jurisdiction.

Because employees in the construction industry frequently work for many different dividual Employers in the course of any given twelve-month-period, and because of the oad community of interest which this cross-flow of employees creates, particularly through e operation of the Job Placement Regulations, the Union, the Individual Employer and all dividual Employers bound by terms and provisions of this Agreement recognize that all mployees who perform work historically, or which may hereafter come within the Union's risdiction are members of a single industry-wide multi-employer unit of Employees.

If the Individual Employer forms or participates in a corporation, association, rtnership, joint venture or firm for the purpose of performing work covered by this greement and which is controlled directly or indirectly by the Individual Employer, the dividual Employer shall notify the Union in writing the day following the formation or rticipation of the name and address of such entity. If the Individual Employer fails to give ch notification it will pay into the Operating Engineers' Pension Trust Fund an amount not exceed the wages, straight time and overtime, and fringe benefits that it would have paid if had performed the work, plus twenty-five percent (25%) of the total amount not as a nalty but by way of liquidated damages.

The parties hereby waive any right that they may have to repudiate this Agreement ring the term of the Agreement or during the term of any extension, modification or nendment to this Agreement.

Based on a sufficient showing of interest, the Individual Employer recognizes and knowledges OPERATING ENGINEERS LOCAL UNION NO. 3 of the International nion of Operating Engineers, AFL-CIO, as the exclusive Section 9(a) collective bargaining presentative of all Employees covered by this Agreement.

If the Individual Employer sells or transfers any or all of its assets, stock and/or erations, it will pay all fringe benefits including contributions, liquidated damages, interest d collection costs, including, but not limited to, attorney's fees and auditor/accountant fees owes prior to the sale or transfer. If the Individual Employer sells or transfers any or all of

its assets, stock, and/or operations, it will provide as a term of the sale or transfer that the buyer or transferee shall recognize the Union as the Employees' bargaining agent and will assume this Agreement.

11. The Individual Employer will execute a promissory note which shall name as the beneficiaries, the Trust Funds and Fringe Benefit Plans provided for in the Master Agreement if it files a bankruptcy petition (any chapter) or if any of its creditors file and involuntary bankruptcy petition (any chapter). The promissory note shall provide for the full payment of fringe benefits, including contributions, liquidated damages, interest and collection costs including, but not limited to, attorney's fees and auditor/accountant fees.

12. If the Individual Employer is a corporation, it's principal shareholder(s) personally guarantee all payment of wages and fringe benefits, including fringe benefit contributions, liquidated damages, interest and collection costs, including, but not limited to, attorney's fees and auditor/accountant fees.

**SECTION NO. 2 — MASTER AGREEMENTS INCORPORATED**

All of the provisions of the current Master Agreement between the Union and the Associated General Contractors of California, Inc. ("AGC"), including the Job Placement Regulations and any amendment or amendments thereto excluding 02.08.04, 02.08.05, 18.03.04, 26.01.00, 26.01.01 and 26.03.00, which are specifically excluded from this Agreement, are incorporated herein as if set forth in full herein. Provided, however, that with respect to 19.00.00 of the Master Agreement, any decision under 19.00.00 involving the meaning of the Agreement resulting in the amendment of that Agreement, shall control, and shall be given full effect under this Agreement.

**SECTION NO. 3 — DISPUTES**

Settlement of any dispute under this Agreement shall be in accordance with Grievance/Arbitration Section of the current Master Agreement unless the Union elects to engage in economic action, in which case, the Grievance/Arbitration section shall not be effective as to the specific dispute. The Union may not engage in economic action over disputes concerning any subcontracting provision of the Master Agreement. If the Union does invoke the dispute resolution procedure set forth in the Master Agreement, the Individual Employer may arrange for its own Board of Adjustment panel or may use the State Board provided for in the Grievance/Arbitration Section of the Master Agreement.

**SECTION NO. 4 — INFORMATION**

For the information and convenience of the parties, the substance of certain provisions of the Master Agreement incorporated by reference are reproduced as an Appendix which is attached hereto.

**SECTION NO. 5 — EFFECTIVE AND TERMINATION DATES**

This Agreement shall, if a renewal Agreement, be retroactive to the effective date of the current Master Agreement, and if not a renewal Agreement, shall be effective the day following the signing of this Agreement. The Individual Employer agrees to be bound to the wages, hours and all other terms and conditions of future Master Agreements and any amendment(s) thereto; provided, however, that in the event either party desires to terminate this Agreement, they may do so during the period of sixty (60) to ninety (90) days prior to the expiration of any Master Agreement.

Receipt of copies of the current Master Agreement and amendments to date, and of the other agreements incorporated by reference therein, is hereby acknowledged by the Individual Employer by acceptance of this Agreement.

**OPERATING ENGINEERS LOCAL UNION NO. 3**
of the International Union of Operating Engineers, AFL-CIO
/s/ John Bonilla, President
/s/ Robert L. Wise, Recording-Corresponding Secretary
/s/ Donald R. Doser, Business Manager

/s/ Business Representative: _____

Agent No. __8329__

If this proposed Agreement is satisfactory, please sign accepting the same at the place provided below:

Accepted this __31__ day of __May__, 200_6_

_____    OWNER

Individual Employer's Name and Title

John Northrup, Owner

CONTRACTS

FEB 9 2009

August 22, 2000-ta
opeiu-3-afl-cio(3)
Independent No. Cal Short Form

TO:
**OPERATING ENGINEERS LOCAL UNION NO. 3**
**1620 South Loop Road, Alameda, CA 94502**

RE: Order to Bill Employer Account for Negotiated Trusts

*You are instructed to bill the following Employer as specified below for payments due the Trust Funds under the provisions of the Collective Bargaining Agreement:*

Company Name: _KRISTIN CONST._

Responsible Officer, Partner, etc.: _JOHN NORTHROP_

Location: _____

Address (for billing): _1781 AUTUMN MEADOWS_

City, State, Zip: _FAIRFIELD  CA  94585_

No. of Engineers PRESENTLY employed (do not include owner): _2_

Commence billing for work performed: _6-1-01_

This Contract is NEW ☒          Or a Renewal ☐

☐ Individual        ☐ Partnership          ☐ Corporation
                    ☐ California            ☐ California
                    ☐ Other                ☐ Foreign

Certified  ☐ MBE ☐ DBE ☐ WBE ☐ DVBE

☐ Yes, I am an Owner-Operator

The Individual Employer shall have the option of paying the contribution rate required under Section 12.08.00, Contract Administration Fund, to the Associated General Contractors of California, Inc., the Association of Engineering Construction Employers or the Engineering & Utility Contractors Association. This Fund shall be utilized by the Employer(s) to process grievances on behalf of Individual Employers. If the Individual Employer does not wish to utilize either of their services in the processing of grievances, the contribution rate shall be paid into the Pensioned Health and Welfare Trust Fund.

**12.08.00** *Contract Administration Fund*                    *Indicate your choice*

AGC ☐
AECE ☐
EUCA ☐
Pensioned Health & Welfare ☒

August 21, 2000-ta
opeiu-3-afl-cio(3)
Independent No. Cal Short Form, Page 2

# *EXHIBIT B-1*

# [COVER]

## 2002-2006

## MASTER AGREEMENT

### For NORTHERN CALIFORNIA
### Between

### OPERATING ENGINEERS LOCAL UNION NO. 3
### of the International Union of Operating Engineers, AFL-CIO

### and
### ASSOCIATED GENERAL CONTRACTORS OF CALIFORNIA, INC.
### ASSOCIATION OF CONSTRUCTION EMPLOYERS
### ASSOCIATION OF ENGINEERING CONSTRUCTION EMPLOYERS
### ENGINEERING AND UTILITY CONTRACTORS ASSOCIATION
### INDUSTRIAL CONTRACTORS UMIC, INC.

For Fair Contracting within the geographic area covered by this Agreement.

***12.10.00*** *Job Placement Center and Market Area Committee Administration Market Preservation Fund.* Each Individual Employer covered by this Agreement shall pay into the Job Placement Center and Market Area Committee Administration Market Preservation Fund according to the following schedule:

Effective June 24, 2002 — Eleven cents ($.11) per hour

***12.11.00*** *Business Development Fund.* Each Individual Employer covered by this Agreement shall pay into the Business Development Trust Fund according to the following schedule:

### AGC and ACE
Effective June 29, 1998 — Eight cents ($.08) per hour

### AECE
Effective September 1, 1998 — Eight cents ($.08) per hour

### EUCA
Effective September 1, 1998 — Nine cents ($.09 ) per hour

### UMIC
Effective June 29, 1998 — Nine cents ($.09) per hour

### Short Form Employers
Effective June 16, 1998 — Twelve cents ($.12) per hour

***12.11.01*** Such monies shall be utilized to maintain and increase signatory contractors' market share and to develop new markets. *[Note: These monies are distributed to the California Alliance for Jobs and/or the Construction Industry Force Account Committee on a proportionate basis according to each Association.]*

***12.11.02*** *Heavy & Highway Committee.* The Employer shall contribute one cent ($.01) per hour to the Heavy and Highway Committee effective January 1, 2001.

***12.12.00*** *Supplemental Dues.* In addition to any amount specified as and for Vacation and Holiday benefits in Section 12.06.00 and 12.06.01 of this Master Agreement, the amount of forty cents ($.40) per hour for each hour paid for or worked shall be added and specifically designated as Supplemental Dues effective for all work performed on and after June 25, 2001; fifty-five cents ($.55) per hour effective for all work performed on or after June 24, 2002; sixty-five cents ($.65) per hour effective for all work performed on or after June 30, 2003; and seventy-five cents ($.75) per hour effective for all work performed on or after June 28, 2004 and eighty-five ($.85) cents per hour effective for all work performed on or after June 27, 2005. These amounts shall be "new money". Upon the execution of a proper authorization as required by law, the amount set forth shall be transmitted from the Vacation-Holiday benefit of each Employee performing work or being paid under this Agreement and shall be remitted directly to the Union. These amounts specified herein shall not be deemed to be part of the Vacation-Holiday benefit but is an amount specifically agreed to as a Supplemental Dues benefit. The amount of the Supplemental Dues transmittal shall be specified on a statement sent to the Employees. Such remittance shall be made to the Union monthly. Supplemental Dues are specifically part of the uniform monthly dues of each Employee, as specified in the provisions of Section 04.02.00, Union Security, of this Agreement. The Employees shall be obligated to make such payment directly to the Union on a monthly basis if the dues authorization provided for herein is not executed, under such terms and conditions as from time to time may be prescribed by the Union.

***12.13.00*** *Delinquencies.* It is agreed that insofar as payments by the Individual Employer are concerned, the parties recognize and acknowledge that the regular and prompt payment of amounts due each Trust by Individual Employers is essential and, based upon prior experience of the parties hereto and in light of the substantial but varied expense incurred in the administration of said Trusts due to delinquencies, the parties agree that it is extremely difficult, if not

impracticable, to fix the actual expense and damage to each Trust, program and Employee which results from the failure of an Individual Employer to make the payments in full within the time provided. Therefore, it is agreed that the amount of damage resulting from any such failure shall be by way of liquidated damages and not as a penalty to each such Trust the sum of thirty-five dollars ($35.00) or fifteen percent (15%) of the amount due and unpaid to each such Trust, whichever is greater, for each failure to pay in full within the time provided. Such liquidated damages shall become due and payable to each such Trust in Alameda, California, at such place as each such Trust has from time to time been determined, upon the day immediately following the date on which the Individual Employer becomes delinquent, and shall be added to and become a part of said amount due and unpaid, and the whole thereof shall bear interest at the rate of twelve percent (12%) per annum until paid.

**12.13.01**    In addition, if a delinquent Individual Employer agrees to pay his delinquency in installments and fails to make such payments in the amount and at the time and place agreed, it is agreed that the amount of damage to each Trust resulting from any such failure shall be by way of liquidated damages and not as a penalty to each such Trust, the sum of thirty-five dollars ($35.00) or fifteen percent (15%) of the amount due and unpaid to each such Trust, whichever is greater, for each such failure to pay in full within the time provided, which amount shall become due and payable to each such Trust in Alameda, California, at the place and time agreed upon, and shall be added to and become a part of said amount due and unpaid, and the whole thereof shall bear interest at the rate of twelve percent (12%) per annum until paid.

**12.13.02**    If any Individual Employer defaults in the making of such payments and if either the Union, the Trusts or the Plan, or any of them, consults or causes to be consulted legal counsel with respect thereto, or files or causes to be filed any suit or claim with respect thereto, there shall be added to the obligation of the Employer who is in default all reasonable expenses incurred by the Union and the Trust in the collection of same, including but not limited to, reasonable attorneys' fees, auditors' and accountants' fees, court costs and all other reasonable expenses incurred in connection with such suit or claim including any appellate proceedings therein.

**12.13.03**    When a contributing Individual Employer has been assessed liquidated damages and interest for a period of two (2) late months during any twelve (12) consecutive month period, upon the occurrence of the second (2nd) assessment the Individual Employer will promptly be notified (with copies to the Local Union and the Employer) that if said Individual Employer becomes delinquent again and is assessed liquidated damages and interest during any of the succeeding twelve(12)-month period, he will be subject to the following rules:

(a) The Individual Employer shall be audited in order to determine compliance with the provisions of this Section 12.00.00 and/or the Trust Fund Documents.

(b) The Individual Employer shall be required to provide the Trust Funds with a cash deposit or bond equal to the sum of the three (3) highest months' contributions made in the immediate preceding twelve(12)-month period, or such lesser sum as the Delinquency Committee deems appropriate.

(c) The Individual Employer's due and delinquent date shall be the 15th day of the month.

(d) Once these special rules have been applied to an Individual Employer, they shall remain in effect for at least twelve (12) months. At the end of this period, the Individual Employer may petition the Board to terminate these special rules and release the cash deposit or bond; this may be allowed only if the Individual Employer has been current in his reports and contributions for each and every month during the preceding twelve (12) -month period and the Board is otherwise satisfied that there will be no further delinquencies. The foregoing rules shall not actually be applied to any Individual Employer until the Delinquency Committee has been advised at a meeting that they have become applicable (or will become applicable if another delinquency occurs). The Delinquency Committee may then, upon its own motion or upon the Individual Employer's request, waive any of the above rules, in whole or in part, for reasonable cause.

**12.13.04**    The parties recognize and agree:

(a) that the references to fringe benefits in Sections 7071.5 and 7071.11 of the California Business and Professions code include payments for fringe benefits and vacation and holiday pay as described in this Agreement and Trust Agreements creating each Trust;

(b) that said payments are for the benefit of the Employees of each Individual Employer covered by this Agreement, and that the failure of an Individual Employer to make said payments, in the manner and at the time prescribed, causes damage to all Employees, including the Employees of the Individual Employer in default, in the amount of the unpaid fringe benefits and vacation and holiday pay as well as the liquidated damages established herein, interest, and any attorneys' and accountants' fees which the Union, the Trusts, or the Plan, or any of them, may incur with respect to said default;

(c) that the Union, the Trusts or the Plan, or any of them, may bring a claim or legal action against the Individual Employer's license bond on behalf of an Employee or Employees covered by this Agreement.

**12.14.00**   *Security for Payments.* Each Individual Employer delinquent one (1) or more months in making the payments set forth in Section 12.00.00 shall be notified by mail by the Fund Manager of the Trust or Trusts applicable of such delinquency. Copies of such notices shall be sent to the Employer and to the Union.

**12.14.01**   Each such delinquent Individual Employer shall within five (5) days of the receipt of such notice (Certified Mail) pay the delinquent amount in full or make other suitable arrangements acceptable to the Delinquency Committee of the Pension Trust Fund for payment. Such amounts owing are to be determined by the Fund Manager of the various Funds. The Committee shall notify the Employer of any such arrangements which may be made.

**12.14.02**   If an Individual Employer fails to pay the delinquencies as determined by the Fund Manager in the time provided in 12.14.01, or fails to make other suitable arrangements for payment acceptable to the Union, it shall not be a violation of this Agreement so long as such delinquency continues, if the Union withdraws the Employees who are subject hereto from the performance of any work for such Individual Employer and such withdrawal for such period shall not be a strike or work stoppage within the terms of this Agreement. In the event that any Employees of any Individual Employer shall be withdrawn pursuant to any similar clause in any agreement between the Individual Employer and any other labor organization, then the Union may respect such withdrawal, and for the period thereof, may refuse to perform any work for such Individual Employer, and such refusal for such period shall not be a violation of this Agreement.

**12.14.03**   Any Employees so withdrawn or refusing to perform any work as herein provided shall not lose their status as Employees but no such Employee shall be entitled to claim or receive any wages or other compensation for any period during which he has been so withdrawn or refused to perform any work.

**13.00.00   STEEL FABRICATING AND ERECTING WORK**

Manning under this Section 13.00.00 shall be as provided in Section 07.00.00, "MANNING," except tank erection work or structural steel work which shall be manned as provided in this Section 13.00.00 and 01.03.02. Employees performing work in classifications not set forth in Section 01.03.02 shall be considered support Employees, and shall be paid at the wage rates for the classifications set forth in Section 01.03.00, and shall work under the terms and conditions contained in the main body of this Agreement excluding this Section 13.00.00.

**13.01.00**   Only Employees manning hoisting equipment working four (4) hours or more in support of a crew or crews consisting of four (4) men or more of the crafts listed below shall be covered by and under this Section 13.00.00:

(1) International Association of Bridge, Structural and Ornamental Iron Workers Union,

(2) International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, and Helpers,

(3) United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada,

(4) International Brotherhood of Electrical Workers.

# *EXHIBIT B-2*

# 2006 - 2010

# MASTER AGREEMENT

## For NORTHERN CALIFORNIA
### Between

## OPERATING ENGINEERS LOCAL UNION NO. 3
### of the International Union of Operating Engineers, AFL-CIO

### and
## ASSOCIATED GENERAL CONTRACTORS OF CALIFORNIA, INC.
## ASSOCIATION OF CONSTRUCTION EMPLOYERS
## ASSOCIATION OF ENGINEERING CONSTRUCTION EMPLOYERS
## ENGINEERING AND UTILITY CONTRACTORS ASSOCIATION
## INDUSTRIAL CONTRACTORS UMIC, INC.

**12.11.00**    *Business Development Fund.* Each Individual Employer covered by this Agreement shall pay into the Business Development Trust Fund according to the following schedule:

**AGC and ACE**

Effective June 29, 1998 — Eight cents ($.08) per hour

**AECE**

Effective September 1, 1998 — Eight cents ($.08) per hour

**EUCA**

Effective September 1, 1998 — Nine cents ($.09) per hour

**UMIC**

Effective June 29, 1998 — Nine cents ($.09) per hour

**Short Form Employers**
Effective June 16, 1998 — Twelve cents ($.12) per hour

**12.11.01**    Such monies shall be utilized to maintain and increase signatory contractors' market share and to develop new markets. *[Note: These monies are distributed to the California Alliance for Jobs and/or the Construction Industry Force Account Committee on a proportionate basis according to each Association.]*

**12.11.02**    *Heavy & Highway Committee.* The Employer shall contribute one cent ($.01) per hour to the Heavy and Highway Committee effective January 1, 2001.

**12.12.00**    *Supplemental Dues.* In addition to any amount specified as and for Vacation and Holiday benefits in Section 12.06.00 and 12.06.01 of this Master Agreement, the amount of eighty-five cents ($.85) per hour for each hour paid for or worked shall be added and specifically designated as Supplemental Dues. Annual increases to supplemental dues from the wage package in Section 01.03.00 shall not exceed ten cents ($.10) per year for the term of this agreement. Upon the execution of a proper authorization as required by law, the amount set forth shall be transmitted from the Vacation-Holiday benefit of each Employee performing work or being paid under this Agreement and shall be remitted directly to the Union. These amounts specified herein shall not be deemed to be part of the Vacation-Holiday benefit but is an amount specifically agreed to as a Supplemental Dues benefit. The amount of the Supplemental Dues transmittal shall be specified on a statement sent to the Employees. Such remittance shall be made to the Union monthly. Supplemental Dues are specifically part of the uniform monthly dues of each Employee, as specified in the provisions of Section 04.02.00, Union Security, of this Agreement. The Employees shall be obligated to make such payment directly to the Union on a monthly basis if the dues authorization provided for herein is not executed, under such terms and conditions as from time to time may be prescribed by the Union.

**12.13.00**    *Delinquencies.* It is agreed that insofar as payments by the Individual Employer are concerned, the parties recognize and acknowledge that the regular and prompt payment of amounts due each Trust by Individual Employers is essential and, based upon prior experience of the parties hereto and in light of the substantial but varied expense incurred in the administration of said Trusts due to delinquencies, the parties agree that it is extremely difficult, if not impracticable, to fix the actual expense and damage to each Trust, program and Employee which results from the failure of an Individual Employer to make the payments in full within the time provided. Therefore, it is agreed that the amount of damage resulting from any such failure shall be by way of liquidated damages and not as a penalty to each such Trust the sum of thirty-five dollars ($35.00) or fifteen percent (15%) of the amount due and unpaid to each such Trust, whichever is greater, for each failure to pay in full within the time provided. Such liquidated damages shall become due and payable to each such Trust in Alameda, California, at such place as each such Trust has from time to time been determined, upon the day immediately following the date on which the Individual Employer becomes delinquent, and shall be added to and become a part of said amount due and unpaid, and the whole thereof shall bear interest at the rate of twelve percent (12%) per annum until paid.

**12.13.01**    In addition, if a delinquent Individual Employer agrees to pay his delinquency in installments and fails to make such payments in the amount and at the time and place agreed, it is agreed that the amount of damage to each Trust resulting from any such failure shall be by way of liquidated damages and not as a penalty to each such Trust, the sum of thirty-five dollars ($35.00) or fifteen percent (15%) of the amount due and unpaid to each such Trust, whichever is greater, for each such failure to pay in full within the time provided, which amount shall become due and payable to

each such Trust in Alameda, California, at the place and time agreed upon, and shall be added to and become a part of said amount due and unpaid, and the whole thereof shall bear interest at the rate of twelve percent (12%) per annum until paid.

*12.13.02*    If any Individual Employer defaults in the making of such payments and if either the Union, the Trusts or the Plan, or any of them, consults or causes to be consulted legal counsel with respect thereto, or files or causes to be filed any suit or claim with respect thereto, there shall be added to the obligation of the Employer who is in default all reasonable expenses incurred by the Union and the Trust in the collection of same, including but not limited to, reasonable attorneys' fees, auditors' and accountants' fees, court costs and all other reasonable expenses incurred in connection with such suit or claim including any appellate proceedings therein.

*12.13.03*    When a contributing Individual Employer has been assessed liquidated damages and interest for a period of two (2) late months during any twelve (12) consecutive month period, upon the occurrence of the second (2nd) assessment the Individual Employer will promptly be notified (with copies to the Local Union and the Employer) that if said Individual Employer becomes delinquent again and is assessed liquidated damages and interest during any of the succeeding twelve(12)-month period, he will be subject to the following rules:

(a) The Individual Employer shall be audited in order to determine compliance with the provisions of this Section 12.00.00 and/or the Trust Fund Documents.

(b) The Individual Employer shall be required to provide the Trust Funds with a cash deposit or bond equal to the sum of the three (3) highest months' contributions made in the immediate preceding twelve(12)-month period, or such lesser sum as the Delinquency Committee deems appropriate.

(c) The Individual Employer's due and delinquent date shall be the 15th day of the month.

(d) Once these special rules have been applied to an Individual Employer, they shall remain in effect for at least twelve (12) months. At the end of this period, the Individual Employer may petition the Board to terminate these special rules and release the cash deposit or bond; this may be allowed only if the Individual Employer has been current in his reports and contributions for each and every month during the preceding twelve (12) -month period and the Board is otherwise satisfied that there will be no further delinquencies. The foregoing rules shall not actually be applied to any Individual Employer until the Delinquency Committee has been advised at a meeting that they have become applicable (or will become applicable if another delinquency occurs). The Delinquency Committee may then, upon its own motion or upon the Individual Employer's request, waive any of the above rules, in whole or in part, for reasonable cause.

*12.13.04*    The parties recognize and agree:

(a) that the references to fringe benefits in Sections 7071.5 and 7071.11 of the California Business and Professions Code include payments for fringe benefits and vacation and holiday pay as described in this Agreement and Trust Agreements creating each Trust;

(b) that said payments are for the benefit of the Employees of each Individual Employer covered by this Agreement, and that the failure of an Individual Employer to make said payments, in the manner and at the time prescribed, causes damage to all Employees, including the Employees of the Individual Employer in default, in the amount of the unpaid fringe benefits and vacation and holiday pay as well as the liquidated damages established herein, interest, and any attorneys' and accountants' fees which the Union, the Trusts, or the Plan, or any of them, may incur with respect to said default;

(c) that the Union, the Trusts or the Plan, or any of them, may bring a claim or legal action against the Individual Employer's license bond on behalf of an Employee or Employees covered by this Agreement.

*12.14.00*    *Security for Payments.* Each Individual Employer delinquent one (1) or more months in making the payments set forth in Section 12.00.00 shall be notified by mail by the Fund Manager of the Trust or Trusts applicable of such delinquency. Copies of such notices shall be sent to the Employer and to the Union.

*12.14.01*    Each such delinquent Individual Employer shall within five (5) days of the receipt of such notice (Certified Mail) pay the delinquent amount in full or make other suitable arrangements acceptable to the Delinquency Committee of the Pension Trust Fund for payment. Such amounts owing are to be determined by the Fund Manager of the various Funds. The Committee shall notify the Employer of any such arrangements which may be made.

*12.14.02*    If an Individual Employer fails to pay the delinquencies as determined by the Fund Manager in the

August 3, 2006-FINAL

time provided in 12.14.01, or fails to make other suitable arrangements for payment acceptable to the Union, it shall not be a violation of this Agreement so long as such delinquency continues, if the Union withdraws the Employees who are subject hereto from the performance of any work for such Individual Employer and such withdrawal for such period shall not be a strike or work stoppage within the terms of this Agreement. In the event that any Employees of any Individual Employer shall be withdrawn pursuant to any similar clause in any agreement between the Individual Employer and any other labor organization, then the Union may respect such withdrawal, and for the period thereof, may refuse to perform any work for such Individual Employer, and such refusal for such period shall not be a violation of this Agreement.

**12.14.03**    Any Employees so withdrawn or refusing to perform any work as herein provided shall not lose their status as Employees but no such Employee shall be entitled to claim or receive any wages or other compensation for any period during which he has been so withdrawn or refused to perform any work.

### 13.00.00    STEEL FABRICATING AND ERECTING WORK

Manning under this Section 13.00.00 shall be as provided in Section 07.00.00, "MANNING," except tank erection work or structural steel work which shall be manned as provided in this Section 13.00.00 and 01.03.02. Employees performing work in classifications not set forth in Section 01.03.02 shall be considered support Employees, and shall be paid at the wage rates for the classifications set forth in Section 01.03.00, and shall work under the terms and conditions contained in the main body of this Agreement excluding this Section 13.00.00.

**13.01.00**    Only Employees manning hoisting equipment working four (4) hours or more in support of a crew or crews consisting of four (4) men or more of the crafts listed below shall be covered by and under this Section 13.00.00:

(1) International Association of Bridge, Structural and Ornamental Iron Workers Union,

(2) International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths and Helpers,

(3) United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada,

(4) International Brotherhood of Electrical Workers.

**13.01.01**    This Section 13.00.00 shall cover all work of the Individual Employer in the geographical area as described in 02.07.00 of this Agreement and the classifications set forth in this Section and any new classifications added under Section 20.00.00 of this Agreement in Northern California. If Individual Employers perform work covered by this Section 13.00.00 in the State of Hawaii, such work shall be covered by this Section.

**13.01.02**    The provisions of this Section 13.00.00 with respect to the work covered by this Section to the extent they differ from any specific provision in this Agreement shall supersede such provision and this Section as to such provision shall control.

**13.02.00**    *Coverage.* This Section 13.00.00 shall cover and apply only to hoisting work performed and power-operated equipment customarily operated by the Union in conjunction with the crews of the International Association of Bridge, Structural and Ornamental Iron Workers Union, with the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths and Helpers; or with the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, or with the International Brotherhood of Electrical Workers.

**13.03.00**    *Wages and Classifications.* Employees performing work covered by this Section 13.00.00 shall be employed in the classifications and at the wage rates set forth in Section 01.03.02 including such additions as may be made in accordance with Section 20.00.00 of this Agreement.

**13.04.00**    *Fringe Benefits.* Fringe benefits applicable to Employees working under the provisions of this Section shall be the same as those set forth in Section 12.00.00 of this Agreement.

**13.05.00**    *Working Rules.* Except as provided hereunder, the Working Rules applicable to this Section 13.00.00 shall be in accordance with Section 06.00.00 of this Agreement.

**13.05.01**    *Reckoning of Time.* The straight time of an Employee shall be reckoned by the shift in the following instances:

(1) During the Employee's first (1st) calendar week of employment.

(2) During the week the work covered by this Agreement is completed. A break in such work of five (5) or more days

# EXHIBIT C

County, and the westerly boundaries of Inyo and Mono Counties.

**02.08.00**   *Bargaining Representatives.*

**02.08.01**   The Union hereby recognizes and acknowledges that Employer is the collective bargaining representative of the Individual Employers authorizing the Employer to represent said person or entity with respect to collective bargaining and labor relations with the Union.

**02.08.02**   This Agreement shall bind each and every Individual Employer as set forth in Section 02.02.00 who has authorized the Employer to represent it with the same force and effect as if the Agreement were entered into by each such Individual Employer. Except as provided in Section 02.02.02, each such Individual Employer shall be and continue to remain bound to this Agreement for and during the term of this Agreement irrespective of whether such Individual Employer shall withdraw its authorization, resign, or be expelled from the Employer prior to the expiration date of this Agreement. However, any Individual Employer who is no longer a member of the Employer shall not be represented by the Employer and shall not be covered by the provisions of Section 18.00.00 (Settlement of Disputes).

**02.08.03**   The Employer and each Individual Employer covered hereby recognizes and acknowledges OPERATING ENGINEERS LOCAL UNION NO. 3 of the International Union of Operating Engineers, AFL-CIO, as the exclusive collective bargaining representative of all Employees covered by this Agreement. The Employer, on it own behalf and on each Individual Employer's behalf, acknowledges that it and they have collective bargaining relationships with the Union within the meaning of Section 9 of the National Labor Relations Act.

**02.08.04**   The wage rates, working conditions, and hours of employment and other conditions of employment herein provided have been negotiated by the Union with the Employer. The Union will give the Employer a copy of all agreements it enters into with any employer which covers on-site work covered by this Agreement which has terms and conditions which are different from this Agreement. An Individual Employer engaging in on-site work of the same type as that covered by such agreement may, upon written notice to the Union, become a party to such agreement.

**02.08.05**   *Project Labor Agreements.* The Union will notify the Employer before it or its agents engage in negotiations for a project labor agreement with an employer, construction manager, public agency or private owner.

**03.00.00   *ADMINISTRATIVE PROVISIONS***

**03.01.00**   *Pre-Job Conferences.* The Individual Employer or an Employer shall notify the Union at least one (1) week prior to the commencement of work by an Employee or Employees covered by this Agreement on all jobs or projects where the estimated or agreed price to be paid to the Individual Employer is $3,000,000 or more. If the Individual Employer conducts a Pre-Job Conference with any other basic craft for a job or project of less than $3,000,000, it will notify the Union and the Union may participate in the Pre-Job Conference.

**03.01.01**   Upon request of the Union, a Pre-Job Conference shall be held. The location shall be at the option of the Employer or Individual Employer. In the event a Pre-Job Conference is not held within two (2) weeks after a written request to the Individual Employer from the Union, Section 18.03.00 shall not be in effect until such Pre-Job Conference is held.

**03.01.02**   All understandings reached at such Pre-Job Conference shall be reduced to writing in a Pre-Job Conference Report and signed by the Individual Employer or Employer and the Union. Such understandings shall be within the scope and terms of this Agreement. For Keymen, refer to 04.08.02 of the Job Placement Regulations.

**03.02.00**   *Records and Requests.* Each Individual Employer shall provide a proper means for registering time, working time and quitting time of its Employees and Owner-Operators. In the event of a specific dispute regarding time, wages or fringe benefit payments of its Employees, or over any matter pertaining to an Owner-Operator, upon written request by the Union, delivered to the Employer and the Individual Employer, the Individual Employer's records relating to said dispute regarding time, wages and fringe benefit payments of its Employees, regardless of classification, or a dispute regarding Owner-Operators, and the Individual Employer's records relating to said dispute shall promptly be accessible to a Business Representative, auditor or other official of the Union during working hours.

**03.02.01**    In the event the Employer disputes the relevance of the records regarding a specific dispute referred to in 03.02.00 above, said dispute shall be subject to the provisions of Section 18.00.00.

**03.02.02**    In the event an Individual Employer fails or refuses to confirm an audit appointment within fourteen (14) days following demand or fails or refuses to submit to an audit within thirty (30) days upon demand, the Union shall not be bound by the provisions of Section 18.00.00 and shall be free to withdraw any or all of the Employees of such Individual Employer and such withdrawal shall not be a violation of this Agreement. Provided, however, the Union shall not withdraw Employees for forty-eight (48) hours after written notification to the Employer of the failure to confirm an audit appointment or the failure to submit to an audit whichever the case shall be, and the Individual Employer shall bear the expenses incurred by the auditor for such forty-eight (48) hour delay.

**03.02.03**    Upon written request of the Union, the Individual Employer shall notify the Union of his intent to perform work on Saturday, Sunday, or a holiday, of the location of job and the number of Employees he intends to employ.

**03.03.00**    *Employee Termination.* The Individual Employer shall notify the Job Placement Center on a form supplied by the Job Placement Center of the names of all Employees who have quit or who have been terminated during the week. (Termination shall mean severance of employment and not temporary layoff.) Such form is to be mailed to the Job Placement Center servicing the job or project not later than Monday of the week following the week of such severance of employment. The Union shall notify the Employer in writing each time any Individual Employer fails to make such report. Any Individual Employer failing to make such report three (3) times in one (1) calendar year shall for such failure to report pay one hundred dollars ($100) into the Operating Engineers and Participating Employers Pre-Apprentice, Apprentice, and Journeyman Affirmative Action Training Fund and one hundred dollars ($100) for each additional failure. In the event an Employee is terminated, the Individual Employer shall indicate on the discharge slip the reasons for discharge, i.e., reduction in force, not qualified, termination of job, etc.

**03.03.01**    *Employee Transfer.* No Employee may be transferred from an Individual Employer's payroll to another Individual Employer's payroll, except in accordance with the Job Placement Regulations.

**03.04.00**    *Conflicting Contracts.* Any oral or written agreements between any Employer, any Signatory Association, or any Individual Employer, and an Employee which conflicts, or is inconsistent with this Agreement or any supplemental Agreement hereto, or which disestablishes, or tends to disestablish the relationship of Employer, Individual Employer, and Employee, or which reestablishes an employment relationship other than that of Employee, shall forthwith terminate.

**03.04.01**    No oral or written agreement which conflicts or is inconsistent with this Agreement, or any supplemental Agreements hereto, shall hereafter be entered into by an Individual Employer.

**03.04.02**    No Employee shall be asked to sign any form relating to his medical history unless required by law or Governmental regulation. This Section shall continue to be applicable until such time as the parties to this Agreement mutually develop and agree to implement an acceptable program.

**03.05.00**    *General Savings Clause.* It is not the intent of either party hereto to violate any laws, rulings, or regulations of any Governmental authority or agency. The parties hereto agree that in the event that any provisions of this Agreement are finally held or determined to be illegal or void as being in contravention of any such laws, rulings, or regulations, nevertheless the remainder of the Agreement shall remain in full force and effect, unless the parts so found to be void are wholly inseparable from the remaining portion of this Agreement. The parties agree that if and when any provisions of this Agreement are finally held or determined to be illegal or void, they will then promptly enter into lawful negotiations concerning the substance thereof.

**03.06.00**    *Favorable Legislation.* In the event legislation covering hours of labor, overtime or other conditions of employment applicable to any work covered by this Agreement is enacted, then and in that event, effective on the effective date of such legislation, such more favorable provisions shall be added to this Agreement and this Agreement modified to conform herewith, applicable to all work covered by this Agreement bid or let on or after the date such provision is added to this Agreement.

# EXHIBIT D

(Revised 1975)

# Pension Trust Fund for Operating Engineers

# TRUST AGREEMENT

73

2500 - 8/78

**Section 4.** The Board of Trustees shall provide at the expense of the Fund, where and to the extent permissible by applicable law, insurance and bonding protection for the Fund and for each Trustee, former Trustee or estate of a deceased Trustee or former Trustee, and all other persons who handle funds or other property of the Fund for any purpose whatsoever. The protection shall be from such companies as the Board shall determine.

*(As Amended July 1, 1975)*

**Section 5.** All checks, drafts, vouchers, or other withdrawals of money from this Fund shall be signed by a person or persons authorized so to do by the Board of Trustees.

**Section 6.** The Board of Trustees shall maintain suitable and adequate records of and for the administration of this Fund and the Pension Plan. The Board can require the Employer, any Signatory Association, any Contributing Employer, the Union, any other Labor Organization, or any Covered Employee, Retired Employee or other beneficiary of the Plan to submit to it any information, data, report, or documents reasonably relevant to and suitable for the purposes of such administration; provided, however, the Union or other Labor Organization cannot be required to submit a list of its members. Reasonable cause appearing therefor upon notice in writing from the Board, a Contributing Employer must permit a certified public accountant appointed by the Board to enter upon the premises of such employer during business hours, at all reasonable time or times, and to examine and copy such books, records, papers or reports of such Contributing Employer as may be necessary to determine whether such Contributing Employer is making full and prompt payment of all sums required to be paid by him or it to this Fund.

**Section 7.** The books of account and records of the Board of Trustees, including the books of account and records pertaining to the Fund shall be audited at least once a year by an independent qualified public accountant engaged by the Board on behalf of all Plan participants who shall conduct such an examination of any financial statements of the Fund and the Pension Plan, and of other books and records of the Fund and Pension Plan, as is required by ERISA. The Board shall also make all other reports required by law. A statement of the results of the annual audit shall be available for inspection by interested persons at the principal office of the Fund and at such other suitable place as the Board may designate from time to time. Copies of such statement shall be delivered to the Employer, the Union and each Trustee within ten days after the statement is prepared.

*(As Amended December 31, 1975)*

**Section 8.** No Covered Employee, no Retired Employee, and no beneficiary shall be discriminated against by the Board of Trustees in any way by reason of membership or non-membership in any union or by reason of activity on behalf of or in opposition to any union, provided, however, for administrative purposes only membership in the Union may be included among other evidence as prima facie proof of employment or availability for employment.

## ARTICLE V
## PROCEDURE OF BOARD OF TRUSTEES

**Section 1.** The Board of Trustees shall determine the time and place of its regular periodic meetings. Either the Chairman or the Co-Chairman or one-third

# EXHIBIT E



**OPERATING ENGINEERS LOCAL UNION No. 3 TRUST FUNDS • MULTI-SERVICES**

4044 NORTH FREEWAY BLVD., SUITE 140
SACRAMENTO, CA 95834
(916) 920-4044 • (916) 920-4145

1620 SOUTH LOOP ROAD
ALAMEDA, CA 94502-7089
(510) 748-7425 • FAX 748-7426

Jurisdiction: Northern California, Northern Nevada, Utah, Hawaii



January 9, 2007

Kristin Construction
1781 Autumn Meadows
Suisun, CA 94585

**Account No.:**        21-47166-24
**Inspection Period:**   January 1, 2003 through the date of the inspection

Dear Sir or Madam:

Pursuant to the Collective Bargaining Agreement covering our respective organizations we deem it necessary to inspect your payroll records in order to ascertain whether or not you have complied with said agreement in the payment of stipulated wage and fringe benefits.

**A list of the records that will be needed is itemized below. If for any reason all of these records are not available, please contact me as soon as possible.**

- California Quarterly Report of Wages, Form DE-6.
- Federal Tax Forms W-3/W-2 and 1096/1099.
- Payroll Registers/Journals.
- Individual Earnings Records.
- Timecards for all employees.
- Contribution Reports for all Trust Funds (including, e.g. Laborers and Carpenters).
- Cash Disbursements Journal.
- Vendor invoices.
- Any other books, records, papers or reports that may be necessary to complete the auditor's determination or provide additional explanation.

A compliance auditor from Operating Engineers Local Union No. 3 Trust Funds will be contacting your office in the near future to schedule an appointment.

Should you have any questions regarding this notification, please contact me at the number above.

Respectfully,

*Wayne E. Mc Bride*

Wayne E. McBride
Collection Manager
WEM/tlb
CERTIFIED MAIL 7006 2760 0001 2528 5636

# EXHIBIT F

```
[ERS01D3<   E M P L O Y E R    S Y S T E M   I N Q U I R Y THOLLOWAY    04/09/08
02.014              FUNCTION  PLAN  EMPR-NBR  SEQ  START  PAGING PAGE    09:12:22
NEXT-REQUEST :  >ERLIST <  |021<  |047166<  |T< >    < >-   <   15
CURR-REQUEST :  >ERLIST <  [021<  [047166<  [T<
      EMPLOYER :  KRISTIN CONSTRUCTION              CNTC: 24 NCA SHRT FRM
   YTD DUE    49099.39  YTD PD        .00  CURRAR   (49099.39)   LCL:
```

| WRK DTE | EMPLEE COUNT | HOURS REPORTED | AMOUNT REPORTED | AMOUNT PAID | ACCOUNTS RECEIVABLE |
|---|---|---|---|---|---|
| 04/06 | 2 | 392.50 | 6,684.28 | .00 | 6,684.28 |
| 05/06 | 3 | 334.00 | 5,688.02 | .00 | 5,688.02 |
| 06/06 | 2 | 347.50 | 5,917.94 | 25,681.26 | 19,763.32- |
| 07/06 | 2 | 556.00 | 10,358.28 | .00 | 10,358.28 |
| 08/06 | 2 | 405.50 | 7,554.47 | .00 | 7,554.47 |
| 09/06 | 2 | 371.50 | 6,921.05 | .00 | 6,921.05 |
| 10/06 | 2 | 417.00 | 7,768.71 | .00 | 7,768.71 |
| 11/06 | 2 | 254.50 | 4,741.34 | .00 | 4,741.34 |
| 12/06 | 2 | 256.50 | 4,778.60 | .00 | 4,778.60 |
| 01/07 | 2 | 220.50 | 4,107.92 | .00 | 4,107.92 |
| 02/07 | 1 | 154.00 | 2,869.02 | .00 | 2,869.02 |

DISPLAY COMPLETE

# EXHIBIT G

EMPLOYER STATEMENT OF ACCOUNT
KRISTIN CONSTRUCTION
1781 AUTUMN MEADOWS
SUISUN  CA 94585
(775) 690-5267

EMPLOYER ACCOUNT: 047156
CONTRACT TYPE:  24  - NCA SHET FMN    ATTORNEY
CONTRACT START: 6/01/01
INACTIVE DATE:

PAGE    1
DATE: 04/09/08 @ 09:08:43
HOURS 1/06 TO 4/08

| HOURS WEEK DATE | DUE | PAID | PRINCIPAL BAL. | EFFECTIVE | PAID | LAMT | INPART | PAID | LQ/INT BAL. | TOTAL OWED |
|---|---|---|---|---|---|---|---|---|---|---|
| BALANCE FORWARD | | | 0.00 | | | | | | 8,191.23 | 8,191.23 |
| 1/06  6/18/06 | NIL | | 0.00 | 3/28/06 | | | 78.35 | | 8,269.58 | 8,269.58 |
| 2/06  6/19/06 | NIL | | 0.00 | 4/26/06 | | | 79.13 | | 8,348.71 | 8,348.71 |
| 3/06  6/19/06 | 7,391.02 | | 7,391.02 | 5/26/06 | | 960.37 | 79.92 | | 8,428.63 | 8,428.63 |
| 4/06  6/19/06 | 6,604.28 | | 14,075.30 | | | 890.06 | 67.49 | | 9,448.49 | 16,896.51 |
| 5/06  6/19/06 | 5,688.02 | | 19,763.32 | 6/27/06 | | 782.21 | 191.33 | | 10,355.55 | 24,450.85 |
| 6/06  7/14/06 | 5,917.93 | | -0.01 | 7/26/06 | | | 108.68 | | 10,546.88 | 24,627.10 |
| 6/06  7/18/06 | 0.01 | 23,691.26 | 0.00 | | | | | | 11,329.09 | 31,062.41 |
| | | | | 8/25/06 | | | 109.76 | | 11,437.77 | 31,261.09 |
| 7/06  10/00/06 | NIL | | 0.00 | 9/26/06 | | | 110.84 | | 11,437.76 | 11,437.76 |
| 7/06  3/25/07 | 10,388.28 | | 10,388.28 | | | | | | 11,547.53 | 11,547.53 |
| 8/06  10/08/06 | NIL | | 10,388.28 | | | | | | 11,658.37 | 11,658.37 |
| | | | | 10/26/06 | | | 111.95 | | 11,659.37 | 11,659.37 |
| 8/06  3/26/07 | 7,554.47 | | 17,912.75 | | | | | | 22,016.65 | 22,016.65 |
| | | | | 11/28/06 | | 930.36 | 113.08 | | 22,128.60 | 22,128.60 |
| 9/06  3/29/07 | 6,521.05 | | 24,633.80 | | | | 259.29 | | 29,580.07 | 29,580.07 |
| | | | | 12/27/06 | | | 114.21 | | 29,796.13 | 29,796.13 |
| 10/06  3/25/07 | 7,768.71 | | 32,602.51 | 1/26/07 | | 1,086.97 | 217.77 | | 37,916.04 | 37,916.04 |
| | | | | | | | 116.36 | | 38,030.25 | 38,030.25 |
| 11/06  3/25/07 | 4,741.34 | | 37,343.85 | 2/27/07 | | 698.76 | 89.93 | | 47,035.70 | 47,035.70 |
| | | | | | | | 118.50 | | 47,169.06 | 47,169.06 |
| 12/06  3/25/07 | 4,778.60 | | 42,122.45 | | | 702.09 | 45.30 | | 52,699.09 | 52,699.09 |
| 1/07  3/25/07 | 4,107.92 | | 46,230.37 | | | 630.71 | | | 52,815.59 | 52,815.59 |
| | | | | | | | | | 52,932.36 | 59,242.36 |
| 2/07  3/29/07 | 2,869.02 | | 49,099.39 | 3/27/07 | | 503.83 | 459.40 | | 63,091.01 | 63,091.01 |
| | | | | | | | | | 63,540.41 | 63,540.41 |
| | | | | 4/26/07 | | | 534.41 | | 65,913.24 | 65,913.24 |
| | | | | 5/29/07 | | | 539.73 | | 67,853.07 | 67,853.07 |
| | | | | 6/26/07 | | | 545.15 | | 67,907.67 | 67,907.67 |
| | | | | 7/26/07 | | | 19,433.16 | | 67,907.40 | 67,907.40 |
| | | | | 8/29/07 | | | 586.39 | | 68,532.55 | 68,532.55 |
| | | | | 9/28/07 | | | 556.09 | | 69,083.14 | 69,083.14 |
| | | | | 10/26/07 | | | 138.84 | | 69,638.84 | 69,638.84 |
| | | | | 11/27/07 | | | 561.66 | | 70,200.50 | 70,200.09 |
| | | | | 12/27/07 | | | 567.28 | | 70,768.17 | 70,768.17 |
| | | | | 1/26/08 | | | 572.95 | | 71,341.12 | 71,341.12 |
| | | | | 2/26/08 | | | 576.67 | | 71,912.79 | 71,912.79 |
| | | | | 3/26/08 | | | 584.46 | | 72,504.25 | 72,504.25 |
| | | | | | | | 590.30 | | 73,094.55 | 73,094.55 |
| | | | | | | | 595.21 | | 73,690.76 | 73,690.76 |

EMPLOYER STATEMENT OF ACCOUNT
KRISTIN CONSTRUCTION
1701 AUTUMN MEADOWS
SUISUN, CA 94585
(775) 690-5467

DATE: 04/09/08 @ 09:08:43    PAGE   2
HOURS 1/06 TO 4/08

EMPLOYER ACCOUNT: 047166    ATTORNEY
CONTRACT TYPE: 24 - HCA SURT FRM
CONTRACT START: 6/01/01
INACTIVE DATE:

| HOURS WEEK | DATE | PAID | PRINCIPAL BAL | EFFECTIVE | LOANT | TRPAMT | PAID | LO/INT BAL | TOTAL OWED |
|---|---|---|---|---|---|---|---|---|---|



|      | J | F | M | A | M | J | J | A | S | O | N | D |
|------|---|---|---|---|---|---|---|---|---|---|---|---|
| 2006 |   |   |   |   |   |   |   |   |   |   |   |   |
| 2007 | X | X | X | X | X | X | X | X | X |   |   |   |
| 2008 | X | X | X |   |   |   |   |   |   |   |   |   |

# EXHIBIT H



## OPERATING ENGINEERS LOCAL UNION NO. 3 TRUST FUNDS • MULTI-SERVICES

4044 NORTH FREEWAY BLVD., SUITE 140
SACRAMENTO, CA 95834
(916) 920-4044 • (916) 920-4145

1620 SOUTH LOOP ROAD
ALAMEDA, CA 94502-7089
(510) 748-7425 • FAX 748-7426

Jurisdiction: Northern California, Northern Nevada, Utah, Hawaii



August 6, 2007

Mr. John Northrup, Owner
Kristin Construction
1781 Autumn Meadows
Suisun, CA 94585

RE:  Account #21-47166-24

Dear Mr Northrup:

Recently an inspection of your payroll records was performed on behalf of Operating Engineers Local Union No 3 Trust Funds. Enclosed is a copy of the inspection results for your review

Should you have any questions, or any additional information that may resolve the liability amounts as listed below, please contact me as soon as possible.

This inspection disclosed a liability of **$38,164.48** for the period <u>January 1, 2004</u> to <u>March 31 2007</u>

| | |
|---|---|
| Fringe benefits including Principal, Liquidated Damages and Interest | $23,318 33 |
| Wages Due: | $3,468.47 |
| Audit Costs: | $11,377 69 |

Full payment of this liability is required within **5 days** from the date of this letter

If you agree with the results as presented, kindly forward a check made payable to Operating Engineers Trust Fund in the amount of **$34,696.02** *to my attention at the above address*

With respect to wage violations, please issue separate checks for wages due less any applicable deductions <u>made payable to the respective individuals</u> and forward them to me for distribution

Again, should you have any questions or additional information you feel is pertinent to this issue please contact me, otherwise full payment of this liability is required within **5 days** from the date of this letter

Respectfully,

*Wayne E. Mc Bride*

Wayne E. McBride
Collection Manager
WEM/dd
cc    Muriel Kaplan, Attorney at Law – Saltzman & Johnson

**WAYNE E. M^cBRIDE - COLLECTION MANAGER**